IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KARIN SKOLD VAN SLYKE

         2000 SEP 18 P 3: 2⁚

v.
         Civil Action WMN-98-2791

NORTHROP GRUMMAN CORPORATION        DEPUTY

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment (Paper No. 84).[1]  The motion is ripe for decision.  Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

**I.   BACKGROUND**

This Title VII action arises out of Plaintiff's employment as an engineer at Northrop Grumman Corporation (Northrop). Plaintiff has been employed at Northrop, or its predecessor, Westinghouse Electric Corporation, since 1978.[2]  Plaintiff claims

_____

[1] Also before the Court is Plaintiff's Motion to Strike Improper Materials (Paper No. 88) and Defendant's Motion to Strike Declarations of Karin and Eric Van Slyke (Paper No. 91). Defendant's Motion will be denied as moot.  Plaintiff acknowledges that parts of her and her husbands declarations are inadmissible.  See Pl's.ns that are admissible, the Court finds that Plaintiff is unable to sustain her discrimination claim.

As for Plaintiff's Motion, it will also be denied as moot, as the Court finds that it need not make reference to the disputed materials in deciding the sufficiency of Plaintiff's discrimination claim.

[2] It appears from the parties' pleadings, that Plaintiff remains employed with Defendant.

1

that she was discriminated against on the basis of her gender in
that she was denied promotional opportunities provided to male
employees.

Plaintiff is employed at Defendant's BWI facility in its
electronic systems business unit, known as the Electronic Sensors
and Systems Sector (ESSS). ESSS is responsible for the
development and production of sophisticated electronic systems
for the nation's defense and civil aviation, in addition to other
domestic and international applications.  From 1990 through May
1998, Plaintiff worked in the Advanced Radar and Avionics
Department (ARAD) of ESSS's Systems Development and Technology
subdivision (SD&T).  Under Defendant's present code salary
system, Plaintiff's salary has increased from a Code 27 to a Code
35 (approximately 250%, from $16,000 to $73,500) during her years
of employment.

Plaintiff alleges, however, that she was repeatedly passed
over in consideration for promotions to Defendant's program
management code[3] (Code 36 or higher), even though she expressly

_____

[3] As discussed below, Defendant admits that its promotion
scheme is unconventional, as "movement between codes is not
predicated on a traditional, competitive promotion system" but
rather is determined by "the nature of the work performed and the
associated degree of responsibility."  Mot. at 6-7.  Plaintiff's
department manager, Richard Davis, testified that the method used
for promotions was for a manager to identify the potential
candidate for promotion based on the scope and responsibilities
of work the individual was currently doing and to identify if the
current work scope and responsibility was above their current
code."  There was no formal application process for promotion.

2

made known her desire for such advancement and demonstrated her
managerial qualifications by aiding others in managing various
programs. Plaintiff specifically contends that in September
1997, three less experienced men, Reid, Capelle and Trachini,
were promoted in preference to her.[4]  Defendant counters that
Plaintiff was not promoted because she repeatedly avoided work in
managerial positions on programs which would have enabled her to
be considered for promotion to management code.  Defendant
further argues that the employees promoted were better qualified
for the positions.  Plaintiff contends that the positions that
she was offered were dead-ends with no promotion potential and
that she, in fact, was better qualified for promotion.

---

Id. at 7.

[4] Plaintiff, in her Opposition, expands this list to include
two other men promoted in the same time period. Plaintiff's Opp.
at 2.  Plaintiff is restricted in argument to the three men to
which she first alluded in her complaint and later specifically
identified in answer to an interrogatory.  Complaint at ¶ 6; Pl's
Interrog. Resp. No. 5; See Diamond v. T. Rowe Price Assocs, Inc.,
852 F.Supp. 372, 406 n.165 (D. Md. 1994)(court found Plaintiff's
attempt in her opposition to defendant's motion for summary
judgment to enlarge an earlier list of comparators was untimely
and prejudicial to defendant, as defendant had relied on the
earlier list as its basis for discovery into and analysis of
plaintiff's promotion claim).  Here, allowing Plaintiff to now
expand her list of comparators would be prejudicial to Defendant,
as Defendant relied on Plaintiff's interrogatory answer
identifying three, not five, comparators as the basis for its
discovery.

3

## II.  ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil
Procedure, summary judgment is appropriate where "there is no
genuine issue as to any material fact and . . . the moving party
is entitled to summary judgment as a matter of law."  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For purposes of
summary judgment, a dispute about a fact is genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party," and a fact is material if, when applied
to the substantive law, it affects the outcome of litigation.
Anderson, 477 U.S. at 248.

A party seeking summary judgment bears the initial
responsibility of informing the court of the basis of its motion
and identifying the portions of the opposing party's case which
it believes demonstrate the absence of a genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  When considering the motion, the court assumes that all
of the non-moving party's evidence is worthy of belief and
justifiable inferences are drawn in favor of the non-moving
party.  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986).  If the movant demonstrates that there is
no genuine issue of material fact and that she is entitled to
summary judgment as a matter of law, the non-moving party must,

4

in order to withstand the motion for summary judgment, produce
sufficient evidence in the form of depositions, affidavits or
other documentation which demonstrates that a triable issue of
fact exists for trial. Celotex, 477 U.S. at 324. The existence
of only a "scintilla of evidence" is not enough to defeat a
motion for summary judgment. Instead, the evidentiary materials
must show facts from which the finder of fact could reasonably
find for the non-moving party. Anderson, 477 U.S. at 252. At
the summary judgment phase, it is not appropriate for the court
to make credibility determinations, weigh the evidence, or draw
inferences from the facts which are adverse to the nonmoving
party; these are jury functions. Anderson, 477 U.S. at 255.

## A. Scope of Plaintiff's Claim

The two jurisdictional prerequisites to a Title VII action
are (1) filing timely charges of employment discrimination with
the EEOC; and (2) receiving and acting upon the EEOC's notice of
the right to sue. McDonnell Douglas Corp. v. Green, 411 U.S.
792, 798 (1973). In Maryland, a charging party must file an EEOC
charge within 300 days of the alleged unlawful employment
practice. 42 U.S.C. § 2000e-5(e)(1). If a charging party fails
to comply with this statutorily mandated filing period, alleged
discriminatory acts which occurred more than 300 days prior to
the filing of the EEOC charge may not be subsequently challenged
in a Title VII suit. Beall v. Abbott Laboratories, 130 F.3d 614,

620-21 (4ᵗʰ Cir. 1997).

Following the above reasoning, Defendant argues that conduct that is alleged to have occurred prior to February 1997 (300 days prior to Plaintiff's filing her charge of sex discrimination with the EEOC) cannot be part of the basis for her claim.[5]  Plaintiff counters that "Defendant's constant and continuing failure to promote" Plaintiff constitutes a "continuing violation" under Title VII, thus enabling her to circumvent the 300 day requirement.  Opp. at 23-25.

An exception to the 2000e-5(e)(1) timely filing requirement is recognized where there are continuing violations.  A continuing violation may consist of either a series of related acts, Beall, 130 F.3d at 620-21, or the maintenance of a discriminatory policy or system.  See Lindemann, B. & Grossman, P., Employment Discrimination Law 1361 (3d. ed. 1996).  The theory is available only if an actual violation has occurred within the required limitations period.  Beall, 130 F.3d at 620-21.

A useful analysis borrowed from the Fifth Circuit, which is consistent with Fourth Circuit precedent, is found in Berry v. Board of Supervisors, 715 F.2d 971, 981 (5ᵗʰ Cir. 1983).  There, the Fifth Circuit recommended a non-exhaustive list of three

_____

[5] It appears from the record that Plaintiff claims knowledge of acts of sex discrimination occurring as early as 1978.  See Compl. ¶ 4; Pl's Dep. at 21-192; Pl's Interrog. Resp. No. 3.

6

factors to consider in determining the existence of a continuing violation. First, do the alleged acts involve the same type of discrimination? Berry, 715 F.2d at 981; Khan v. Jenkins, 1987 WL 36862 at *3 (4ᵗʰ Cir. 1987)("a continuing violation can be shown only by allegations detailing the same type of discriminatory action or violation"), cert. denied, 484 U.S. 1061 (1988). Second, are the incidents recurring or are they independent and isolated events? Berry, 715 F.2d at 981. Finally, did the earlier acts have sufficient permanency to trigger the employee's awareness of and duty to challenge the alleged violation? Id.; Lindemann & Grossman at 1362 ("courts frequently reject continuing violation claims when the plaintiff understood the earlier action(s) were not to be temporary or tentative – particularly when the plaintiff was aware of, or at least suspected discrimination at the time the earlier action(s) were taken"); Talbot v. Mobil Corp., 46 F.Supp.2d 468, 472 (E.D. Va. 1999).

The continuing violation theory (a type of equitable tolling) applies where the "plaintiff proves 'that it would have been impossible for a reasonably prudent person to learn that [an employment action] was discriminatory.'" Olson v. Mobil Oil Corp., 904 F.2d 198, 200 (4ᵗʰ Cir. 1990)(quoting Miller v. Int'l Tel. and Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985)). Such impossibility exists only where the plaintiff is unaware of the

facts giving rise to the claim because the defendant has
intentionally concealed them. Id. at 201.

Defendant correctly argues that Plaintiff cannot sustain a
claim of "continuing violation" in the present case. Plaintiff
argues that Defendant's secretive promotion structure made it
impossible for her to apply or be considered for promotions.
Opp. at 25. There is no evidence in the record, however, that
the process was secretive, though, as Defendant readily admits,
the process is very informal. Plaintiff's own description of the
process implies that the process is more informal than it is
secretive. See id. at 27 (citing Defendant's explanation of non-
traditional, non-competitive system) and 28 (promotion
opportunities were not required to be posted; no competition for
promotions sought). Furthermore, Plaintiff fails to meet her
burden of showing that she was unaware of this informal structure
- a requirement for the application of the continuing violation
exception. In fact, Plaintiff admits that she repeatedly made
use of the promotion structure, "aggressively pursuing program
management opportunities" and repeatedly telling her department
managers that she desired a management position. Opp. at 29.
Such an admission indicates that Plaintiff was aware of the
structure through which she must pass to obtain the promotion she
desired.

In addition, following the Olson test, the Court finds that

8

it was possible for a "reasonably prudent person" to learn that the alleged failure to promote was possibly discriminatory. Looking solely to her answer to Defendant's interrogatory, Plaintiff cites numerous and frequent alleged discriminatory acts evidencing Defendant's failure to promote Plaintiff, while promoting men whom Plaintiff aided in management duties. See Pl's Resp. Interrog. No. 3 ("March 1991-September 1992: Required to perform code 36 responsibilities without promotion whereas male members with similar responsibilities were code 36 or higher; December 1993-July 1994: Denied deputy program manager positions, given to male manager from outside department; July 1994-April 1996: Authority undermined as manager of a program and Plaintiff was replaced by a male manager who was given her office). Looking at the nature, frequency, and number of the alleged acts that Plaintiff states she considered to be discriminatory, the Court finds that a reasonably prudent person would have, at a point prior to December 1997 (the time of Plaintiff's EEOC complaint), questioned the existence of a discriminatory promotion process.

As Plaintiff cannot satisfy her burden of establishing the existence of a continuing violation, the Court's analysis will be restricted to Plaintiff's claim that Defendant failed to promote her in favor of three less experienced men and to her related claims of discrimination occurring within the 300 day period

9

prior to filing her EEOC charge.

## B. Proof Scheme for Discrimination Claim

In order to show intentional discrimination, the plaintiff can present either direct or indirect evidence. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997). The necessary proof to indirectly establish a claim of disparate treatment (such as the failure to promote) is encompassed within a three-part framework: (1) the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence, id.; (2) the burden then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); and (3) the burden shifts back to the plaintiff to demonstrate that the reason offered by the employer is false, Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000).[6] The Court finds, as explained below, that Plaintiff fails to adequately support her claim of discrimination, as she is unable to demonstrate that Defendant's reason for its failure to promote her is pretextual.

---

[6] As Plaintiff correctly anticipated, the recent Supreme Court decision in Reeves overturned the Fourth Circuit's "pretext-plus" requirement, put forth in Vaughn v. MetraHealth Cos., Inc., which made it necessary for the plaintiff to demonstrate not only that the employer's proffered nondiscriminatory reason is false, but that the employer's actions were motivated by discriminatory intent. 145 F.3d 197, 202 (4th Cir. 1998).

10

**1. The Prima Facie Case**

In order to establish a prima facie case of failure to promote, Plaintiff must show by a preponderance of the evidence that "(1) she is a member of a protected class; (2) there was an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Evans v. Technologies Applications and Svc. Co., 80 F.3d 954, 958 (4th Cir. 1996). Plaintiff is clearly a member of a protected class. Defendant argues that Plaintiff cannot establish that she applied for a specific program management position, and thus fails to establish a prima facie case of discrimination. See Mot. at 20.

Plaintiff is correct in her assertion, however, that where an employer maintains an informal promotion selection process in which promotion positions are not posted or announced, formal applications are not accepted, and department managers select an employee for promotion based on their skills, qualifications and current job responsibilities, it is unnecessary for Plaintiff to demonstrate that she applied for a specific promotion position in order to meet the second prong of her prima facie case. See Elguindy v. Commonwealth Edison Co., 903 F.Supp. 1260, 1267 (N.D. Ill. 1995).

In Elguindy, employees were not told when particular

11

supervisory positions became available, or that they were being considered for such positions. Under those circumstance, the District Court for the Northern District of Illinois found that, although the plaintiff was unable to point to specific promotion positions in which she expressed an interest, the plaintiff, in order to satisfy the second prong of her prima facie case, was only required to show that had she known of a particular position, she would have applied. Id. The court further found that the plaintiff had satisfied that burden, as the evidence indicated that she repeatedly expressed her desire for promotion to her supervisors and requested that she be enrolled in courses teaching managerial and supervisory skills. The court found that "it is reasonable to infer that the plaintiff would have applied for (and accepted) a supervisory position had she been made aware of one." Id.

The facts of Elguindy parallel those of the present case. As previously noted, Defendant itself admits that it has a very informal promotion structure in which applications for program management positions are not accepted, positions are not posted, and department managers consider employees based on their skills and current job responsibilities. Mot. at 6-7; Leahy Dep. at 115; Overman Dep. at 50-51; Armor Dep. at 145. Considering this structure, it would be illogical to require Plaintiff to formally apply for a specific program management position in order to

12

satisfy the second prong of her prima facie case. As in
Elguindy, Plaintiff has repeatedly expressed her desire for
promotion, making Defendant aware of this desire. See Slyke Doc.
286, 1998 Performance Appraisal ("Lack of promotion to code 36
was discussed. Kevin will work with Karin this year to provide
job opportunities which will warrant the code 36 job description.
This included discussions of program/project management jobs");
Davis Dep. at 37 ("[W]e discussed what her desire would be . . .
in terms of program and program opportunities"); Leahy Dep. 51-52
("The discussion was specifically regarding Band 35 and whether
or not that was a dead end, that it would preclude her future
advancement to Band 3 [Code 36 and above]. I explained to her
that it was not a dead end and that Band 35 was a position from
which you could continue to be developed and be a candidate for
further promotion").

Defendant admits its awareness of Plaintiff's continued
interest in promotion by acknowledging that Plaintiff's
department managers "actively worked with [P]laintiff to identify
performance objectives and responsibilities on particular
programs that would provide her with management opportunities."
Mot. at 11. Moreover, Plaintiff repeatedly accepted positions
that her department managers represented as leading to promotion
opportunities, such as her positions on CyroRadar and RTIP. See
Mot. at 12, 13. Thus, following the rationale in Elguindy, the

13

court finds that it is reasonable to infer from Plaintiff's repeated expressions of interest in promotion and her initial acceptance of positions with the potential of leading to promotions that Plaintiff would have applied for (and accepted) a program management position had she been aware of one.

Plaintiff has also satisfied the third prong of her prima facie case, as the record adequately establishes that she was qualified for the management positions to which Reid, Capelle and Tranchini were promoted. As noted above, Defendant admits to repeatedly placing Plaintiff in positions that Defendant claims had promotion possibilities, such as CyroRadar and RTIP. See Mot. at 12, 13. Moreover, Plaintiff's department manager, Mr. Leahy, testified that Plaintiff was capable of holding the positions Mr. Reid held. Leahy Dep. at 144. In regards to the duties pertaining to Mr. Capelle's position, Mr. Leahy testified that, "[Plaintiff's] technical background would have made the project more of [a] challenge for her but yeah, she could have handled that." Id. at 145.[7]

Assuming, as reasoned above, that Plaintiff meets the first

---

[7] Though Defendant is correct that there is no record of any of Plaintiff's managers "conceding" that Plaintiff could have done Tranchini's work, Defendant draws an invalid conclusion from that fact. Regardless of whether there is evidence that Plaintiff could have done Tranchini's job specifically, the record clearly demonstrates that Defendant apparently believed Plaintiff was qualified for management positions, as it repeatedly placed her on assignments with "promotional opportunities." See Mot. at 14.

14

three prongs of her prima facie case of failure to promote, Plaintiff must also establish that she was repeatedly rejected for advancement under circumstances giving rise to an inference of unlawful discrimination. This burden, as with the other elements of the prima facie case is not onerous. See Burdine, 450 U.S. at 253; Young v. Lehman, 748 F.2d 194, 197 (4th Cir. 1984)("burden of establishing a prima facie case is not a heavy one" and is a "relatively easy test"). That the promotions in 1997 and 1998 went to men, though Plaintiff "applied" and was qualified for management positions, is enough evidence for Plaintiff to meet this relatively easy burden. See Emmel v. Coca-Cola Bottling Co., 95 F.3d 627, 629 (7th Cir. 1996) (inference of discrimination exists where a plaintiff establishes that she was in a protected class; that she was qualified for the promotion; that she did not receive the promotion despite her qualifications; and that a person not in the protected class was promoted instead)(citing McDonnell Douglas, 411 U.S. at 802).

## 2. Defendant's Legitimate Nondiscriminatory Reason and Plaintiff's Burden of Demonstrating Pretext

Assuming Plaintiff has met her initial burden, the burden then shifts to Defendant to provide a legitimate, nondiscriminatory reason for failing to promote Plaintiff. See Burdine, 450 U.S. at 253, 256. Defendant proffers that the men promoted were better qualified than Plaintiff for the positions. See Mot. at 33-34. As Defendant correctly argues, "[j]ob

15

performance and relative employee qualifications are widely
recognized as valid, non-discriminatory bases for any adverse
employment decision." Evans, 80 F.3d at 960.

Plaintiff, relying on various decisions from courts outside
this Circuit, counters that Defendant is not entitled to use a
"superior qualifications" rationale for its promotion decision
where it failed to consider Plaintiff for the specific positions
in question. See Opp. at 45-47 (citing Lams v. General
Waterworks Corp., 766 F.2d 386, 393 (8th Cir. 1985); Ostroff v.
Employment Exchange, Inc., 683 F.2d 302, 304 (9th Cir. 1982);
Nanty v. Barrows Co., 660 F.2d 1327, 1332 (9th Cir. 1981),
overruled on other grounds by, O'Day v. McDonnell Douglas
Helicopter Co., 79 F.3d 756, 760-61 (9th Cir. 1996); Townsend v.
WMATA, 746 F.Supp. 178, 186 (D.D.C. 1990), Emmel v. Coca-Cola
Bottling Co., 95 F.3d 627 (7th Cir. 1996); Joshi v. Fla.State
Univ. Health Ctr., 763 F.2d 1227, 1235 (11th Cir. 1985)).
Plaintiff's reliance on these decisions is misplaced, however, as
the cases relied upon are factually distinct from the case at
hand.  For example, in Lams, black employees suing under a
failure to promote theory were segregated into one work unit of
the company and were never told, even when they inquired, of
promotion opportunities in other work departments so that they
could be considered for such promotions.  In both Ostroff and
Nanty, the Ninth Circuit resolved cases involving fact situations

16

in which the defendants had no knowledge of plaintiff's qualifications whatsoever and, upon inquiry into job availability, the plaintiff was told that there were no available positions, though, in fact, one existed. Moreover, the Ninth Circuit in Ostroff, citing its prior decision in Nanty, indicated that the rule stated by the plaintiff applies only where a defendant "had no knowledge of, and no way of evaluating, [the plaintiff's] qualifications." 660 F.2d at 1332. In the present case, Plaintiff was not segregated in any way from those she identified as comparators. Furthermore, the record demonstrates that Defendant had knowledge of Plaintiff's qualifications, as it had hired her and repeatedly met with her to discuss positions in accord with her qualifications and skills. See Davis Dep. at 37-38; Mot. at 10-11 ("ARAD employees would discuss performance and promotion objectives with Mr. Davis during a yearly performance review"; "Mr. Davis's practice was to assist the employee in identifying objectives and program opportunities consistent with the employee's goals and demonstrated ability").

In Townsend, the United States District Court for the District of Columbia held that the defendant was not entitled to a "superior qualifications" explanation because it was evident that the defendant had "improperly and prematurely eliminated the plaintiff from consideration for the [promotion] vacancy" by denying the plaintiff an interview where the interview process

17

was "a very important part of the applicant screening process."
746 F.Supp. at 181. Moreover, it was evident that the plaintiff
had been prematurely eliminated as company documentation
indicated that another candidate had been selected for the
position, though the plaintiff was told thereafter that the
position remained open and no final appointments had been made.
Id. at 179-80. In the present case, there was no similar
interview process, nor was there the deception as to the status
of the selection process.

Plaintiff's reliance on Emmel is also misplaced as the facts
there demonstrated that the defendant failed to raise its
particular explanation for its failure to promote the plaintiff
until trial. Under those facts, the Court did not disrupt the
jury's finding that the particular explanation was pretextual and
created post-hoc. 95 F.3d at 634.

Finally, the facts of Joshi are also crucially distinct from
Plaintiff's case. In Joshi, the plaintiff's written application
was repeatedly not considered for available job positions by
those with decision making power. The Eleventh Circuit found
that the plaintiff's qualifications were not known or considered
by the relevant decision makers and, thus, the defendant was not
entitled to a "superior qualifications" explanation. 763 F.2d at
1235. Here, as previously explained, the decision makers were
clearly aware of Plaintiff's skills and qualifications.

18

Defendant's "superior qualifications" explanation,
therefore, constitutes a legitimate, non-discriminatory reason
for its failure to promote Plaintiff.  Thus, the burden shifts
back to Plaintiff to demonstrate that Defendant's proffered
reason is false and merely pretextual.  See Reeves, 120 S. Ct. at
2106.  Plaintiff fails to satisfy this burden, as her two
attempted methods of demonstrating pretext prove inadequate.

First, Plaintiff attempts to demonstrate pretext by
reference to statistical data.  As this Court found in a recent
failure to promote case, "statistical evidence has little, if
any, relevance in an individual disparate treatment action."
Bostron v. Apfel, 104 F.Supp.2d 548 (D. Md. 2000) (citing
McClosky v. Prince George's County, Md., 1996 WL 726854, at *1
(4[h] Cir. Dec. 18, 1996); see also Opara v. Modern Mfg. Co., 434
F.Supp. 1040, 1044-45 (D. Md. 1977); and Carmichael v. Birmingham
Saw Works, 738 F.2d 1126, 1131-32 (11th Cir. 1984).  Moreover, in
an individual disparate treatment action, as compared to a class
action disparate treatment action, statistics alone are an
insufficient means of demonstrating pretext.  Id. (citing Warren
v. Halstead Industries, Inc., 613 F.Supp. 499, 506 n.2 (M.D.N.C.
1985)).

Even were the Court to consider plaintiff's statistical
evidence, it is highly questionable as to whether the proffered
evidence would support a finding of pretext.  Although Plaintiff

19

is correct that the evidence demonstrates that Defendant was not promoting women within ESSS at the rate that it employs women in that department, the statistics offered demonstrate that women were being placed in management positions within ESSS (for which all SD&T employees, including those within ARAD, were eligible) at a percentage very near their total percentage employed within ESSS. See Opp. at 44 (the total percentage of women engineers employed in ESSS is 11.7%, and, in 1998, the year in which Plaintiff alleges the discriminatory promotions of Reid, Capelle and Tranchini occurred, 10% of 70 management positions were given to women engineers). The percentage difference is minimal and does not represent a significant disparity between the percentage of women promoted within ESSS and the total percentage of women making up the qualified labor pool for such promotions. Thus, Plaintiff's attempt to demonstrate pretext by reference to statistics fails.

Plaintiff, therefore, is left with the burden of demonstrating pretext by establishing that she was better qualified for the positions given to Reid, Capelle, and Tranchini.[8] The sole evidence Plaintiff offers to establish that

_____

[8]Plaintiff is correct that, under the Supreme Court's decision in Patterson v. McLean Credit Union, a plaintiff is not required to demonstrate that she is better qualified to demonstrate pretext. 491 U.S. 164, 187-88. Plaintiff, however, misinterprets the import of Patterson in the present case. In Patterson, the Supreme Court simply held that where the plaintiff has an alternative means of demonstrating pretext available to her, she is not required to demonstrate, in addition, that she is

she was better qualified is her and her husband's subjective
belief as to her qualifications as compared to those of Reid,
Capelle and Tranchini. See Opp. at 49; Pl's Decl. ¶ 30. But as
the Fourth Circuit held in Lowery v. Circuit City Stores, Inc.,
"[t]he mere assertion [by the plaintiff] that [the plaintiff] was
more qualified is insufficient to establish pretext." 158 F.3d
742, 763 (4th Cir. 1998), vacated on other grounds, 119 S. Ct.
2388 (1999). Accord Vaughn v. Metra Health Cos., Inc., 145 F.3d
197, 202 (4th Cir. 1998).

Plaintiff erroneously points to Mr. Leahy's acknowledgment
of Plaintiff's ability to do the jobs that were given to the
three men and her "long and successful management and leadership
experience in a broad range of programs" as evidence of her
superior qualifications. See Opp. at 49. Evaluating the record
in the light most favorable to Plaintiff, Mr. Leahy's
acknowledgments, as well as Plaintiff's superior performance
evaluations over the years and past management and leadership
experience in a broad range of programs, merely demonstrate that
Plaintiff was arguably as qualified as the three men promoted.
Such evidence does nothing to establish that Plaintiff is more

_____

better qualified in order to establish pretext. See id. Here,
as explained above, Plaintiff's sole alternative means of
demonstrating pretext, i.e., by reliance on statistics, fails.
Thus, having offered no other means for demonstrating pretext,
Plaintiff is now left with the burden of establishing that she
was better qualified for the positions given to Reid, Capelle,
and Tranchini.

21

qualified - the burden which plaintiff must satisfy at the
pretext stage.  Because Plaintiff fails to meet her final burden
of rebutting Defendant's legitimate non-discriminatory reason by
demonstrating that Defendant's proffered reason is false, her
claim must fail.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary
Judgment will be granted.  A separate order will issue.


William M. Nickerson
United States District Judge

Dated: September *18* , 2000.

22